Case number 21-3056. United States of America versus Antonio Moreno-Membache appellant. Ms. Hernandez for the appellant. Mr. Nguyen for the appellate. Good morning, Ms. Hernandez. Good morning, your honors. May it please the court. My name is Carmen Hernandez. I represent Antonio Moreno-Membache. This case is back before your honors on remand. The court previously found, this court previously found that the government had breached its plea agreement and remanded the case for a hearing untainted and uninfluenced by its prior findings based on the breach of the plea agreement. And I think the key issue in this case is whether the district court followed that. From Mr. Moreno-Membache's point of view, it's clear that the court did not. The court was resistant, critical of this court's opinion. And the government encouraged that each time the district court found, asked whether it was supposed to do a new hearing. The government said, no, you can, you know, you have already made a finding. You don't need to review it. And I think not only were the court repeatedly, did the district court repeatedly criticize this court's opinion and resist what this court had done. A couple of things it did make clear that it, that's what it was doing. It was sticking with its previous finding. Number one, I represented defendant below. And when I submit, I tried to submit an exhibit list to this new sentencing hearing, the court rejected that, said she was not having any of it. She wasn't going to have a new evidentiary hearing. She also, another issue that was clear, the, the really the only cooperator that the government had for the fact finding. And by the way, it was not, it was just based on a document. There was no actual evidence. The only person that the government relied on was a person that after, after he got two in 2018. So by the time the previous sentencing hearing was held, he had been re-arrested, re-convicted and re-sentenced. That information was not put before the district court. And I only learned of it at the last minute before the, this hearing that we had this third sentencing hearing. But your contention isn't that the hearing should have been continued so that you could make full use of that knowledge, right? No, your honor. And the statement that inculpated your client was made before the re-arrest and re-conviction, right? Correct. But I, I, I would say to the court that in my many years of practice, I can't imagine a district court based on just a statement that the person had made four years after he started cooperating. And all of a sudden, by the time this statement is presented to the court, the person has already been re-arrested, re-convicted, and again, apparently cooperating with the government and nothing is brought to the court's attention. I think most district court judges would disregard, or at least look askance at anything that person said, particularly given all the other problems with that person's the only one who claimed to have seen a firearm. He saw it for the first time, or he said that for the first time, four years after he had begun cooperating, eight proffered sessions after he had started, and there was no tangible evidence to corroborate. When the defendant was arrested, he didn't have a firearm. He had never been seen with a firearm by anybody else. There was no telephone, intercepted phone calls, no reference to the defendant having a firearm. So all the problems with that statement, and then this person gets re-arrested and a district court says, oh, no big deal. I always knew he was a drug trafficker. I didn't expect any better of it. I think that's completely inconsistent with how courts view uncorroborated testimony, particularly because it's one thing when someone's always been a drug trafficker or has committed a bunch of crimes, now changes his stripes, admits responsibility, starts cooperating with the government. The theory is you've turned your life around. You're now going to do the right thing. This guy, not only he gamed the system, is what I would say to the court, and the idea that the district court just disregarded that, I think goes more than anything to the fact that the judge was wedded to its earlier finding and wasn't going to change no matter what. So I think it's pretty clear from everything the court said, the district court said, and everything she did, that she just wasn't having a new hearing. And just for the court to understand the narrow issue, there were two statements that in any way, shape, or form played on the court had to make. There were two cooperators who alleged, one cooperator alleged to have seen a firearm, the other cooperator alleged to have seen a bulge that appeared to him maybe was a firearm. That's it. It didn't need extensive hearing. It just had to do, let me compare these two documents. They never appeared, these two persons never appeared before the court. What was the government's burden, so to speak, with respect to proving this fact? You know, that's an interesting question. It's from the safety valve, and as the court knows, there are five factors to be considered, and I don't think this court has ever determined who has the burden on each of the factors. The district court said it was the government's any other burden of sentencing, because it was an aggravating. So the safety valve itself is a mitigating factor, which would ordinarily be up to the defense to prove, but each of the five factors that must be found in order to make somebody eligible under the safety valve, some are mitigators, some are aggravators, and I believe the district court found that it was the government's Is it a burden by a preponderance? Is it by some evidence? Is it by clear and convincing? What is the burden under our presence? Well, at sentencing, it's a preponderance. Obviously, defense always argues for a higher burden, but no court has found that it's anything other than preponderance at sentencing. So that was it. So is it your argument that the finding was clear error? Or is it your finding that just that the fact that the district court would credit this and not have a more fulsome hearing just shows an abuse of discretion by the district court? Both. I mean, number one, I think the main issue on appeal is whether the district court followed this court's mandate. And then the second issue, even if it followed the court's mandate, the decision was clearly erroneous and an abuse of discretion and not holding a full hearing. But the primary issue is that I think the record is fairly clear that the court did not follow this court's mandates. And all these factual issues that I'm raising for the court are just evidence of the fact that the district court did not. I mean, I've appeared before. Again, as I say, I don't I very rare that a district court would give so much value to a someone the court had never met, because he never appeared. So there was no demeanor evidence for the court to credit. It was just a blank statement. I think I'm running into my rebuttal time. But we'll ask Judge Walker, Judge Randolph, do you have questions? I was just wondering, did you file a reply brief, Mr. Hernandez? I'm sorry. No, Your Honor. Okay. It seemed like a pretty straightforward issue. I mean, the issue is whether the district court followed the court's mandate or not. I think that's a pretty straight issue. And I will say one thing, I did not ask originally for a remand to a different judge, because I didn't think it was a unique case. I thought the district court give the benefit of the doubt the district court would follow the court's mandate. It only after in the hearing, it became clear to me that the court was not that I requested that the court remand to a different case, recuse yourself. Thank you, Your Honor. All right. Thank you. We'll hear from the government. Good morning, Your Honor. As the man please the court. Connor Winn, United States. In this case, as Mr. Hernandez just articulated, there's really two questions at the heart of the appeal. Did the district court comply with this court's mandate back in its prior opinion? And did the district court have sufficient evidence to make a finding that Moreno-Mimbashi, that's the firearm in connection with his drug trafficking in this case? The answer to both questions are yes. Starting first with the contours of this court's mandate from its prior opinion. First, this court remanded the district court to desync to segregate its supervisory and managerial status finding from its firearm. And it directed the district court to do that through argument and evidence that was untainted by the government's plea agreement. But this court didn't tell the district court to go about doing that via a new evidentiary hearing. Instead, it commanded only that the district court engage in a new sentencing proceeding. And that's what the district court did here. It received supplemental briefing from both sides, which contained all of the relevant firearm finding evidence that the district court needed. In addition, it had access to the portions of the evidentiary hearing record that were status evidence and argument from the last appeal. Then with that information, it brought the parties in for sentencing. It took oral argument from both the government and from Mr. Mimbashi. And with that evidence, it reached an oral ruling. All of this was in the contours of this court's last opinion. It gave Mr. Mimbashi exactly what this court ordered, a new sentencing proceeding, untainted and uninfluenced by the government's prior breach of the plea agreement. Now, that evidence that was before the district court was sufficient to make the firearm finding here. All the district court had to find was that Moreno Mimbashi possessed a firearm and that it was possessed in connection with a drug trafficking offense. The evidence was certainly sufficient to support that conclusion on both fronts, and the district court didn't clearly err in reaching the conclusion that it did. And with regards to possession, specifically two witnesses testified that they had seen Moreno Mimbashi carrying a firearm at different points in time throughout the drug trafficking conspiracy in this case. The first at a planning meeting for the MIS-FE, which was the drug trafficking boat used here to smuggle- They testified? Excuse me, they didn't testify, Your Honor. There was a special agent who acted as a summary witness in this case, and they, during interviews with that special agent, conveyed this information to him. Then he testified before the district court. Now, as I was mentioning, the first of these witnesses told law enforcement that Mr. Moreno Mimbashi had a firearm at a planning meeting. And at that planning meeting, Mr. Mimbashi removed the firearm in plain view, ejected the magazine, inspected the magazine, and then reloaded it, brandishing the firearm in front of his co-conspirators, signaling that he was capable of fulfilling his duties in this drug trafficking conspiracy, specifically moving, storing, and protecting the cocaine as he transported it to Colombia. The second vignette came from another of Moreno Mimbashi's co-conspirators, who said that at the MIS-FE's launch site, the place where drugs were being loaded and unloaded, he saw Moreno Mimbashi with what appeared to be the silhouette or outline of a handgun concealed within his waistband. Once again, that was evidence that Moreno Mimbashi possessed a firearm during his drug trafficking duties. And either of those incidents also shows that the possession of the firearm was in connection with the drug trafficking offense. Whether he brandished the firearm in front of his co-conspirators to instill confidence in them that he would carry out his duties, or whether he carried the firearm around the illegal narcotics, in this case, to protect the contraband, both of those would qualify as purposes capable of facilitating the drug trafficking offense. Given all this, the district court didn't clearly err. There was adequate and reliable evidence for it to reach the conclusion it did, and to deny Moreno Mimbashi's request for safety. What about the re-arrest and re-conviction? Yes, Your Honor. So a couple of points on that. First, the district court actually considered that evidence in the most recent sentencing hearing. And in two ways, there's a Brady component to this, and then just a re-evaluation of the evidence that the district court conducted. With regards to the Brady claim that Moreno Mimbashi has asserted, the government doesn't see a Brady violation here. First, the evidence was disclosed to Moreno Mimbashi in advance of the sentencing hearing that forms the basis for the sentence currently on appeal. So he had access to this evidence. He was able to argue about this evidence to the district court. That's all that Brady required. In addition, with regards to Brady, the government doesn't see any sort of prejudice arising from any non- or leaked disclosure because it told the district... Shouldn't it have been disclosed before the prior sentencing? Absolutely, Your Honor. And the government takes its Brady obligations seriously, and it should have disclosed that information sooner. And that was just a mistake on our part. The fact that we didn't disclose it before that prior sentencing might have caused a Brady non-disclosure problem if it had that sentence still been in effect. But after this court's opinion of vacating Mr. Mimbashi's a new sentencing proceeding in its entirety, the subsequent disclosure of that evidence prevented any Brady violation from infecting the sentence that's currently on appeal here. Now, because Mr. Mimbashi had access to that evidence at sentencing, he actually argued to the district court that it should use this evidence to revisit the credibility findings that it had previously made and that it was making again, but the district court declined to do so. And it was well within its discretion to take that view. It looked at the evidence and said, I know that Mr. Pariadis is a drug trafficker. That's not new information. I nevertheless find it plausible that what he's saying about the firearm being used in connection with this drug trafficking offense is plausible. And that's all that this court's case law in the United States would be later on requires. Now, one final point on all this, and then I'm happy to take any questions that the panel might still have. The district court went about this in a neutral and detached way. This court remanded the case to the district court because it believed that the chief judge was capable of handling Mr. Mimbashi's resentencing in a neutral and detached manner. And despite what Mr. Mimbashi has just argued here, he did in fact request for this court to reassign the case to a different district judge, but this court declined to do so. And you can see that Mr. Mimbashi made that request in his previous reply brief, in the previous appeal on page two. But this court thought that the district judge could adhere to the commands it was giving in its prior opinion. And that's exactly what the district court did here. This court should affirm the judgment and sentence of the district court. And if there are no further questions, the government's happy to rest on the briefs. Judge Walker, Judge Randolph, do you have further questions? No. All right. Thank you, Mr. Nguyen. Ms. Fernandez. Rana, the government's factual recitation is just not accurate. And the record is, there's a problem with the record, which the government has chosen to ignore. The second cooperator never said that he saw a firearm at a planning meeting or anywhere else. He said he had seen a bolt in the shirt, which he determined probably was a firearm. He never saw it at a planning meeting. The entirety of his statement, which is one paragraph long, is in the record at page 81 of the appendix. Was that individual present at the meeting that the other fellow talked about with the defendant here brandishing the firearm? Presumably he was, Your Honor. He was at all the planning meetings. Those two were the two quote unquote cooperators were two members of the boat crew. And presumably they were always at the planning meetings, yet their stories did not. Presumably, but we don't know, right? Right. The statements that are at issue here is one paragraph from one debrief four years later, and one paragraph from the others debrief four years later. So that's all the statements that are at issue here. There was no testimony. And this wasn't an extensive rehearing that was required. It was just let's review the two proffers, which were reports by an FBI agent or an agent. And the person who testified at the earlier hearing, the agent who testified at the earlier hearing had not interviewed either of these witnesses. So he was testifying completely from these written proffers and the errors in the earlier hearing, which the court never, this court never resolved at the, which were brought to this court's attention, never resolved at the earlier appeal is because this court remanded for what it deemed a new sentencing proceeding. And that is not what happened in this case. This was not a new sentencing proceeding. And the facts clearly do not support it, Your Honor. My time is over. It just look, I'm sorry, I just think it's to sentence a person based on the uncorroborated testimony of a person who's just continuing to be a criminal with no corroboration, no tangible evidence, nothing is, there just has to be a limit to the extent to which the sentencing guidelines allow that kind of sentencing in the court. I know some of your honors have been district court judges and know the burden of sentencing defendants, but this is, this goes beyond, this is clearly erroneous and abusive discretion. Thank you, Your Honor, for your indulgence in letting me go on. All right. Thank you, Ms. Hernandez. Mr. Nguyen will take the matter under advisory.
judges: Wilkins, Walker, Randolph